# Exhibit C

10/4/2024 11:24 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 92796787
By: Bernitta Barrett
Filed: 10/4/2024 11:24 AM

CAUSE NO. _____

| | | |
|---|---|---|
| VIRAGE SPV 1 LLC, | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| SHENAQ PC, | § | |
| *Defendant*. | § | |
| | § | |
| | § | _____ JUDICIAL DISTRICT |

---

## PLAINTIFF'S ORIGINAL PETITION

---

Plaintiff Virage SPV 1 LLC ("Virage"), files this Original Petition against Defendant Shenaq PC ("Shenaq") as follows:

## I. <u>PARTIES</u>

1.      Plaintiff Virage SPV 1 LLC is a Delaware limited liability company. Virage's sole manager is Virage Capital Management LP. Virage Capital Management LP's principal place of business is in Harris County, Texas.

2.      Defendant Shenaq PC is a law firm with offices in both Texas and Georgia. Its principal places of business are 4900 Fournace Place, Bellaire, Texas 77401, and 3500 Lenox Rd, Suite 1500, Atlanta, Georgia 30326, and may be served with process through its registered agent, Amir Shenaq, wherever he is found.

## II. <u>JURISDICTION AND VENUE</u>

3.      The Court has subject matter jurisdiction over Virage's claims because the amount in controversy is within the jurisdictional limits of the district court. *See* Tex. Const. Art. V, § 8; Tex. Gov't Code § 24.007(b).

4.      This Court has personal jurisdiction over Shenaq PC because its principal office in Texas is in Harris County, Texas. *See id.* at § 15.002(a)(3).

5.      Personal jurisdiction and venue are also proper for the Defendant in Harris County, Texas because Section 3.7 of the Amended Multi-Party Agreement ("Agreement" or "AMPA") between Virage, Shenaq, and others specifies any Texas State court sitting in the City of Houston as the appropriate venue. Ex. 1, AMPA; *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016); Tex. Civ. Prac. & Rem. Code § 17.042(1). The Agreement is a valid and enforceable agreement among Virage and Shenaq.

6.      Personal jurisdiction and venue are also proper for the Defendant in Harris County, Texas because all or a substantial part of the events or omissions giving rise to Virage's claims occurred in Harris County, Texas. The place for the performance and payment of the Agreement is Harris County, Texas; Texas law governs the Agreement; and the Agreement was executed, performed, breached, and enforced in Harris County, Texas. *See id.* at § 15.002(a)(1).

### III. DISCOVERY CONTROL PLAN

7.      Discovery will be conducted under Level 2 of Texas Rule of Civil Procedure 190. Virage seeks monetary relief over $1,000,000.

### IV. BACKGROUND

8.      Virage is a litigation finance company that lends to law firms for various business purposes, including marketing, case expenses, overhead, and growth.

9.      Shenaq is a law firm in Harris County, Texas.

**A.      The Amended Multi-Party Agreement**

10.     On April 29, 2018, Virage as "Lender," Howard & Associates, Attorneys at Law P.A. (the "Howard Firm") as "Borrower", Phillip T. Howard ("Howard") as "Guarantor," Shenaq as "Co-Counsel," and Settlement Alliance, LLC ("Archer") as "Agent" (collectively, the "Parties"), entered into a "Multi-Party Agreement." On April 15, 2019, the Parties amended the Agreement, creating the current "Amended Multi-Party Agreement." Ex. 1, AMPA.

11.     The parties entered the AMPA to secure their respective rights regarding case "Collateral" and said Collateral's "Proceeds." Ex. 1 §§ 1.1, 2.1. The Collateral is defined as:

> "Collateral" means collectively the NFL Litigation related Virage VL1114 Collateral and the NFL Litigation related Virage SPV Collateral attached hereto as Exhibit B.

Ex. 1 § 1.1. Proceeds is defined as:

> "Proceeds" means (i) all receipts, remittances, payments, prepayments amounts received as a result of any exercise of right or any sale or other disposition of any Collateral; (ii) any property constituting payments for the account of Borrower in respect of any Collateral; (iii) any property given in exchange or substitution for any Collateral; in the

> case of each of clauses (i) through (iii), whether in cash or kind and whether paid to the Agent Account or otherwise, excluding any such amounts that are Litigation Expense Receivables or litigation advertising receivables and, for the avoidance of doubt, excluding funds deposited in an Agent Account in error that belong to parties other than Borrower.

Ex. 1 § 1.1.

12.     Virage holds a first-priority security interest in the Collateral and Proceeds to secure payment from Virage's Borrower, the Howard Firm. Ex. 1 §§ 1.1, 2.1. This arises from two prior loan agreements (the "Loans") between Virage and the Howard Firm that are acknowledged in the AMPA. *Id.* Shenaq holds a second and subordinate security interest to secure its percentage of the proceeds for working the cases as co-counsel to the Howard Firm. *Id.*

13.     One hundred percent (100%) of the Proceeds from the Collateral were to be paid to an Agent Account operated by Archer for disbursement. Ex. 1 § 2.5.

14.     First, from the Proceeds, Archer, as permitted by Virage, was to reimburse Shenaq the "Amounts" defined as:

3

> 2.7    Application of Proceeds of NFL Litigation. On each Payment Date, Agent will apply any Current Cases Proceeds in the Agent Account as of the close of business on the Payment Date in the following order of application:
>
> FIRST, to the payment of all reasonable and documented costs and expenses incurred by Virage or Co-Counsel, as the case may be, in connection with the enforcement of Liens or such sale, collection or realization, or otherwise in connection with the Current Cases, and all amounts advanced by Virage or Co-Counsel, as the case may be, to protect the Current Cases (including, without limitation, any amounts paid in respect of taxes, filing fees, and satisfaction of liens on the Current Cases of third parties), including all court costs and the reasonable fees and expenses of its agents and legal counsel, the repayment of all advances made by Virage or Co-Counsel, as the case may be, hereunder or under any other Collateral Document on behalf of any Obligor in connection with the Current Cases and any other reasonable and documented costs or expenses incurred in connection with the exercise of any right or remedy hereunder in connection with the Current Cases (collectively, all of the foregoing, the *"Amounts"*);

Ex. 1 § 2.7.

15.    These Amounts were to "reimburse Amounts incurred by Co-Counsel [Shenaq]" for work on the Collateral. Ex. 1 § 2.8. Virage also agreed to disburse $74,938.23 to Shenaq, with an additional $75,000 per month for the next four months. *Id.*

16.    To receive reimbursements for the Amounts, Shenaq was required to provide Virage with access to information regarding them. Ex. 1 § 2.8(c).

17.    Then, the remaining "Proceeds" were to be disbursed with 60% to Virage, 20% to Co-Counsel (Shenaq), 10% for the application of further expenses, and 10% to the Borrower (Howard Firm). Ex. 1 § 2.7.

**B.    Virage's Security Interest**

18.    Virage's security interest in the Collateral attached upon: (a) Virage advancing monies to the Borrower under the Loans; (b) Virage and the Borrower executing the Loans and their related "Security Agreements," which describes the Collateral as Case Proceeds from the Eligible Cases and Eligible Collateral Cases; and (c) the Borrower maintaining and/or obtaining

rights in each Eligible Case or Eligible Collateral Case. *See* Tex. Bus. & Com. Code § 9.203(b); Ex. 1, AMPA.

19.     Virage's security interest automatically perfected upon execution of those Loan Agreements. *Id.* § 9.309(2). Additionally, Virage perfected its security interest by filing UCC financing statements.

20.     The Collateral for Virage's attached and perfected security interests includes all funds contemplated in the definition of "Proceeds" (defined above) under the AMPA. Ex. 1 § 1.1.

21.     Under Sections 9.203(f) and 9.315(a) of the Texas Business and Commerce Code, the Collateral for Virage's attached, perfected security interests also includes: "(A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral; (B) whatever is collected on, or distributed on account of, collateral; (C) rights arising out of collateral; (D) to the extent of the value of the collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to the collateral; [and] (E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to the collateral." *See* Tex. Bus. & Com. Code §§ 9.203(f), 9.315(a) and 9.102(65).

C.     **Shenaq's Breaches**

22.     Shenaq materially breached the AMPA. Each of the below breaches caused financial harm to Virage.

a.     **Proceeds.** The AMPA required Shenaq to deposit 100% of the Proceeds from the Collateral into the Agent Account. Ex. 1 §§ 2.5, 2.7. Instead, Shenaq kept the Proceeds.

b.     **Information.** To be reimbursed for the Amounts, Shenaq "agree[d] to provide Virage with access to the information with respect to any such Amounts," such as invoices

and records to verify their accuracy and authenticity. Ex. 1 § 2.8(c). Shenaq did not

do so despite Virage's repeated requests.

23.     As of this filing, Virage has not been reimbursed for the damages caused by

Shenaq's breaches, including the Proceeds that Shenaq owes to Virage but has never disbursed.

## V. CONDITIONS PRECEDENT

24.     All conditions precedent have been met, have occurred, or have been waived.

## VI. CAUSES OF ACTION

### A. DECLARATORY JUDGMENT

25.     Virage fully incorporates the preceding paragraphs as if stated herein.

26.     An actual and justiciable controversy exists among Virage and Shenaq regarding:

(a) Virage's security interest; (b) whether material breaches occurred under the AMPA; and (c)

Virage's rights as a perfected, secured creditor to obtain payment.

27.     Under Chapter 37 of the Texas Civil Practice and Remedies Code, Virage seeks

declarations that:

a.      Virage's security interest in Shenaq's right to payment of all Proceeds from any

        Collateral, is attached and perfected, and Virage has priority in the Proceeds over

        any other claim from Shenaq or a third party, including, but not limited to, a third-

        party firm; and

b.      Virage has the right to direct third parties to pay 100% of Proceeds directly to

        Virage itself, without input from or notice to Shenaq. *See* Tex. Bus. & Com. Code

        § 9.607.

28.     Because awarding attorneys' fees and costs to Virage is equitable and just under

Chapters 37 and 38 of the Texas Civil Practice and Remedies Code, as well as Section 9.607(d) of

the Texas Business and Commerce Code, Virage is entitled to costs and attorneys' fees.

## B.  BREACH OF CONTRACT AGAINST SHENAQ

29.     Virage fully incorporates the preceding paragraphs as if stated herein.

30.     The AMPA between Virage and Shenaq is a valid, enforceable contract under which Shenaq must both pay Collateral Proceeds to the Agent Account from which they are then to be paid to Virage and provide Virage with information to verify the accuracy and authenticity of the Amounts.

31.     Virage has performed, tendered performance of, or is excused from performing all obligations under the AMPA.

32.     Shenaq materially breached Sections 2.5, 2.7, and 2.8 of the AMPA by not remitting Proceeds owed to Virage and not providing Virage with information such as invoices and records to verify the accuracy and authenticity of the Amounts.

33.     These breaches caused Virage injuries, including, but not limited to, actual damages, direct damages, indirect damages, incidental damages, consequential damages, and special damages.

34.     Virage presented its claim to Shenaq, and Shenaq refused to comply. Virage now seeks reasonable and necessary attorneys' fees under Chapters 37 and 38 of the Texas Civil Practice & Remedies Code. Virage is also entitled to attorneys' fees, costs, and expenses under Section 9.607(d) of the Texas Business and Commerce Code.

## VII.      JURY DEMAND

31.     Virage demands a trial by jury.

## VIII.      TEXAS RULE OF CIVIL PROCEDURE 47(c) STATEMENT

32.     Virage seeks monetary relief over $1,000,000 in the form of declarations, actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, interest, attorney's fees, and costs.

## IX  RULE 193.7 NOTICE

33.    Virage gives notice to Shenaq that Virage intends to use all documents exchanged and produced between the parties during the trial in this matter.

## X.    PRAYER FOR RELIEF

35.    For these reasons, Virage asks for actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, interest, attorneys' fees, costs, and all other relief to which Virage is entitled in law or equity.


Respectfully Submitted,

**AHMAD, ZAVITSANOS & MENSING, PLLC**

*/s/Cody Watson*
Todd Mensing
Texas Bar No. 24013156
Cameron Byrd
Texas Bar No. 24097444
Thomas Cooke
Texas Bar No. 24124818
Cody Watson
Texas Bar No. 24137278
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: 713-655-1101
Facsimile: 713-655-0062
tmensing@azalaw.com
cbyrd@azalaw.com
tcooke@azalaw.com
cwatson@azalaw.com

**ATTORNEYS FOR PLAINTIFF**
**VIRAGE SPV 1 LLC**

Exhibit No.

1

# AMENDED MULTI-PARTY AGREEMENT

### DATED AS OF APRIL 15, 2019

### AMONG

# ARCHER SYSTEMS, LLC (F/K/A SETTLEMENT ALLIANCE, LLC)
### AS AGENT

## SHENAQ PC
### AS CO-COUNSEL

## VIRAGE SPV 1 LLC
### AS LENDER

# HOWARD & ASSOCIATES, ATTORNEYS AT LAW, P.A.
### AS BORROWER

### AND

## PHILLIP T. HOWARD
### AS GUARANTOR

# TABLE OF CONTENTS

Page

**SECTION 1. DEFINITIONS; PRINCIPLES OF CONSTRUCTION** ...................................1
1.1    Defined Terms ..............................................................................................1
1.2    Rules of Interpretation. ................................................................................6

**SECTION 2. THE LIENS AND CERTAIN RIGHTS** ..........................................................6
2.1    Acknowledgment of Security Interests. ......................................................6
2.2    Enforcement Action. ....................................................................................6
2.3    Subordination. ..............................................................................................6
2.4    Waiver of Right of Marshalling, Etc. ..........................................................7
2.5    Collection of Proceeds from the Collateral. ...............................................7
2.6    Segregation of Proceeds by Agent. .............................................................7
2.7    Application of Proceeds of NFL Litigation. ................................................7
2.8    Payments to Co-Counsel for Amounts. .......................................................8
2.9    Payment Accounts. .......................................................................................9
2.10   Amendments to Co-Counsel Documents. ....................................................9
2.11   Administration of Virage Obligations and Collateral. .................................9
2.12   Bankruptcy Issues. .....................................................................................10

**SECTION 3. MISCELLANEOUS PROVISIONS** ............................................................10
3.1    Successors and Assigns. .............................................................................10
3.2    Delay and Waiver. ......................................................................................11
3.3    Notices. ......................................................................................................11
3.4    Entire Agreement. .......................................................................................12
3.5    Severability. ...............................................................................................12
3.6    Headings. ....................................................................................................12
3.7    Governing Law. ..........................................................................................12
3.8    Counterparts. ..............................................................................................12
3.9    Effectiveness. .............................................................................................12
3.10   Insolvency. .................................................................................................12
3.11   Rights and Immunities of Agent. ...............................................................12
3.12   Further Assurances. ....................................................................................12
3.13   Indemnification. .........................................................................................13

## SCHEDULES AND EXHIBITS:

Schedule 1          Account Information

Exhibit A           Co-Counsel Agreement
Exhibit B           Schedule of Cases

## AMENDED MULTI-PARTY AGREEMENT

This AMENDED MULTI-PARTY AGREEMENT is dated as of April 15, 2019 (as amended, supplemented, amended and restated or otherwise modified from time to time, this "*Agreement*"), and is by and among ARCHER SYSTEMS, LLC (F/K/A SETTLEMENT ALLIANCE, LLC), a Texas limited liability company (the "*Initial Agent*" and until replaced by a Successor Agent, collectively the "*Agent*"), SHENAQ PC, a Georgia domestic professional corporation (the "*Co-Counsel*"), VIRAGE SPV 1 LLC, a Delaware limited liability company, its successors and assigns ("*Virage*" or "*Lender*"), Howard & Associates, Attorneys at Law, P.A., a Professional Corporation organized under the laws of the State of Florida, as "*Borrower*" (herein so called), and Phillip T. Howard, an individual, as Guarantor of the Virage Obligations ("*Guarantor*").

### W I T N E S S E T H

Reference is hereby made to that certain Second Amended and Restated Loan Agreement executed in connection with the Virage Note, dated as of April 30, 2018 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "*Virage SPV Credit Agreement*"), by and between Borrower and Virage.

Reference is also hereby made to that certain Loan Agreement executed in connection with the Virage VL1114 Note, dated as of April 15, 2019 (as amended, amended and restated, supplemented or otherwise modified from time to time, including any future increases in the principal amount of such note, the "*Virage VL1114 Credit Agreement*"), by and between Borrower and Virage.

The Parties hereto have entered into this Agreement to provide that Co-Counsel acknowledges and consents to the Lender Obligations and Lender Liens regarding the Collateral as defined below, and for Co-Counsel to agree that its Liens are subordinate to those of Lender, and agree to subordination of its rights with respect to the Co-Counsel Obligations, subject to the provisions hereto.

Further, the Parties hereto agree that Agent shall distribute the Proceeds in accordance with the terms of this Agreement.

In consideration of the premises and the mutual agreements herein set forth, the receipt and sufficiency of which are hereby acknowledged, the Parties to this Agreement hereby agree as follows:

## SECTION 1. DEFINITIONS; PRINCIPLES OF CONSTRUCTION

1.1      Defined TermsThe following terms will have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"Agent" is defined as set forth in the preamble.

"Agent Account" means that certain deposit account in the name of Co-Counsel into which all Proceeds of Collateral will be deposited as more particularly described on Schedule 1 attached hereto, the costs and expenses of such Agent Account to be paid by Borrower.

"Amounts" shall have the meaning set forth in Section 2.7.

"Agreement" is defined as set forth in the preamble.

"Borrower" is defined as set forth in the preamble.

"Business Day" means any day other than a Saturday, Sunday or day on which banks in Houston, Texas are authorized or required by law to close.

"Cases" means collectively settled cases or any other case that (i) Borrower represents, directly or indirectly, currently or in the future, a party through a Fee Agreement, a Master Referral Agreement, or otherwise; and (ii) Borrower has a Right to Payment as defined below.

"Co-Counsel Agreement" means the agreement dated as of April 29, 2018 (as amended, amended and restated, supplemented or otherwise modified from time to time) in substantially the form attached hereto as Exhibit A.

"Co-Counsel Documents" means the Co-Counsel Agreement.

"Co-Counsel Law Firm" means a law firm other than Borrower that may be handling one or more of the Cases and is responsible for distribution to Borrower of Contingent Fees or Litigation Expense Receivables.

"Co-Counsel Liens" means Liens in favor of Co-Counsel pursuant to the Co-Counsel Agreement to secure the Co-Counsel Obligations.

"Co-Counsel Obligations" means the obligations of Borrower in favor of Co-Counsel arising under or in connection with the Co-Counsel Documents or otherwise.

"Collateral" means collectively the NFL Litigation related Virage VL1114 Collateral and the NFL Litigation related Virage SPV Collateral attached hereto as Exhibit B.

"Collateral Documents" means (i) this Agreement, (ii) the "Collateral Documents" as defined in the Virage VL1114 Credit Agreement, (iii) the "Collateral" as defined in the Virage SPV Credit Agreement, (iv) each deposit account, Co-Counsel Agreement, or other agreement or direction to pay, and (v) the Co-Counsel Documents.

"Contingent Fee" means any attorneys' fees due to or received by Borrower in connection with any Case as set forth in Fee Agreements and/or Master Referral Agreements relating to such Case, whether payable or earned by settlement, mediation, arbitration, judgment, or otherwise.

"Credit Agreements" means collectively Virage SPV Credit Agreement and the Virage VL1114 Credit Agreement.

"Current Cases" shall have the meaning as set forth in Section 2.5 below.

"Debt" means collectively (i) the Virage Obligations and (ii) the Co-Counsel Obligations.

"Discharge of Virage VL1114 Obligations" means the occurrence of all of the following:

(a) termination or expiration of all commitments of Virage under the Virage VL1114 Credit Agreement; and

(b) payment in full in cash and discharge of the principal of and interest and premium (if any) on all Virage VL1114 Obligations.

"Discharge of Virage SPV Obligations" means the occurrence of all of the following:

(a) termination or expiration of all commitments of Virage under the Virage SPV Credit Agreement; and

(b) payment in full in cash and discharge of the principal of and interest and premium (if any) on all Virage SPV Obligations.

"Fee Agreement" means each agreement by and between Borrower and (a) one or more clients by which Borrower collects or is entitled to collect attorneys' fees and expenses in connection with any litigation wherein Borrower represents such clients in any Cases, and/or (b) another law firm or attorney whereby Borrower is or may be entitled to any fees and expenses in connection with such Cases.

"Guarantor" is defined in the preamble.

"Guarantor Account" means that certain deposit account in the name of Guarantor more particularly described on Schedule 1 attached hereto.

"Insolvency or Liquidation Proceeding" means:

(a)     any case commenced by or against Borrower or Guarantor under Title 11, U.S. Code or any similar United States federal or state law or law of any other jurisdiction for the relief of debtors, any other proceeding for the reorganization, recapitalization or adjustment or marshalling of the assets or liabilities of Borrower or Guarantor, any receivership or assignment for the benefit of creditors relating to Borrower or Guarantor or any similar case or proceeding relative to Borrower or Guarantor or its creditors, as such, in each case whether or not voluntary;

(b)     any liquidation, dissolution, marshalling of assets or liabilities, or other winding up of or relating to Borrower or Guarantor, in each case whether or not voluntary and whether or not involving bankruptcy or insolvency; or

(c)     any other proceeding of any type or nature in which substantially all claims of creditors of Borrower or Guarantor are determined, and any payment or distribution is or may be made on account of such claims.

"Lien" means any lien, mortgage, assignment, security interest, charge, or encumbrance of any kind (including any agreement to give any of the foregoing, any conditional sale or other title retention agreement and any lease in the nature thereof) and any option, trust or other preferential arrangement having the practical effect of any of the foregoing.

"Litigation Expense Receivables" means expenses of Borrower and/or Guarantor due to Borrower and/or Guarantor in connection with the Cases.

"Master Referral Agreements" means any material referral agreements with attorneys and/or law firms that refer Cases to Borrower which set forth the sharing of fees, if applicable.

"NFL Litigation" means those legal matters (whether or not filed) involving the class action, individual actions and claims involving concussion injuries to former National Football League players throughout the country made against the National Football League or any of its members teams.

"Obligor" means, as the context may require, Borrower and/or Guarantor.

"Obligations" shall have the meaning as set forth in the Credit Agreements.

"Parties" means each of the parties to this Agreement.

"Payment Date" means no later than the tenth (10th) Business Day of each calendar month or if such day is not a Business Day, the first Business Day immediately following such date.

"Payor" with respect to any Case means the Co-Counsel Law Firm handling distributions with respect to such Case or, if a Co-Counsel Law Firm is not handling such distributions, the court in which such Case is currently filed or the court-appointed party responsible for making such distributions.

"Person" means any natural person, corporation, limited liability company, partnership, joint venture, association, cooperative, trust or unincorporated organization, governmental authority, or any other legal entity, whether acting in an individual, fiduciary or other capacity.

"Proceeds" means (i) all receipts, remittances, payments, prepayments amounts received as a result of any exercise of right or any sale or other disposition of any Collateral; (ii) any property constituting payments for the account of Borrower in respect of any Collateral; (iii) any property given in exchange or substitution for any Collateral; in the

case of each of clauses (i) through (iii), whether in cash or kind and whether paid to the Agent Account or otherwise, excluding any such amounts that are Litigation Expense Receivables or litigation advertising receivables and, for the avoidance of doubt, excluding funds deposited in an Agent Account in error that belong to parties other than Borrower.

"Right to Payment" means each "account," "account receivable," "payment intangible," "contract right", or such similar terms as may be used by the UCC.

"Secured Parties" means Virage and Co-Counsel.

"Termination Date" means the date upon which the Discharge of Virage SPV Obligations occurs.

"UCC" means the Uniform Commercial Code as in effect from time to time in the State of Texas or any other applicable jurisdiction.

"Virage" is defined in the preamble.

"Virage Account" means that certain deposit account in the name of Virage more particularly described on Schedule 1 attached hereto.

"Virage Event of Default" means an Event of Default as defined in either of the Credit Agreements.

"Virage Documents" means the "Loan Documents" as defined in the Credit Agreements.

"Virage Obligations" means all liabilities and Obligations of each Obligor arising under or in connection with the Virage SPV Obligations and the Virage VL1114 Obligations.

"Virage VL1114 Collateral" means all of the Borrower's Cases relating to its current and future dockets, in which the Borrower has a current or hereafter acquires a legal interest in, including but not limited to the Collateral listed in Exhibit B, unless specifically excluded pursuant to a writing signed by Virage.

"Virage VL1114 Credit Agreement" is defined in the first recital.

"Virage VL1114 Obligations" means all liabilities and Obligations of each Obligor arising pursuant to the Virage VL1114 Note and the Virage VL1114 Credit Agreement.

"Virage SPV Collateral" means all of the Borrower's Cases relating to its current and future dockets, in which the Borrower has a current or hereafter acquires a legal interest in, including but not limited to the Collateral listed on Exhibit B.

"Virage SPV Credit Agreement" is defined in the second recital.

"Virage SPV Obligations" means all liabilities and Obligations of each Obligor arising pursuant to the Virage SPV Note and the Virage SPV Credit Agreement.

1.2     Rules of Interpretation.

(a)     All terms used in this Agreement that are defined in Article 9 of the UCC and not otherwise defined herein have the meanings assigned to them in Article 9 of the UCC.

(b)     The use in this Agreement of the word "include" or "including," when following any general statement, term, or matter, will not be construed to limit such statement, term, or matter to the specific items or matters set forth immediately following such word or to similar items or matters, whether or not non-limiting language (such as "without limitation" or "but not limited to" or words of similar import) is used with reference thereto, but will be deemed to refer to all other items or matters that fall within the broadest possible scope of such general statement, term or matter.  The word "will" shall be construed to have the same meaning and effect as the word "shall."

(c)     References to "Sections," "clauses," "recitals" and the "preamble" will be to Sections, clauses, recitals and the preamble, respectively, of this Agreement unless otherwise specifically provided.  References to "Exhibits" and "Schedules" will be to Exhibits and Schedules, respectively, to this Agreement unless otherwise specifically provided.

(d)     This Agreement will be construed without regard to the identity of the Party who drafted it and as though the Parties participated equally in drafting it.  Consequently, each of the Parties acknowledges and agrees that any rule of construction that a document is to be construed against the drafting Party will not be applicable to this Agreement.

## SECTION 2. THE LIENS AND CERTAIN RIGHTS

2.1     Acknowledgment of Security Interests.The Parties hereto acknowledge and agree that, pursuant to the applicable Collateral Documents, Borrower has granted (i) to Virage a first priority security interest in, to and under the Collateral to secure the payment or performance of the Virage VL1114 Obligations and the Virage SPV Obligations, and (ii) to Co-Counsel a second and subordinate security interest in, to, and under the Collateral to secure the Co-Counsel Obligations which shall become a pari passu first and prior security interest in and to the Collateral upon the Discharge of both the Virage VL1114 Obligations and Virage SPV Obligations, subject to the order of distribution of Proceeds from the Current Cases as referenced in Section 2.6 hereof.

2.2     Enforcement Action.Until the Discharge of the Virage Obligations, Virage retains the sole right to commence and maintain any enforcement action against the Collateral in accordance herewith, subject to distribution of the Proceeds in accordance with this Agreement.

2.3     Subordination.Any Lien in and to the Collateral in favor of Co-Counsel to secure the Co-Counsel Obligations shall be, and is, junior and subordinate in all respects to all Liens in the Collateral held by Virage to the full extent of the amount of the Virage Obligations.  However, upon the Discharge of Virage VL1114 Obligations and the Discharge of Virage SPV Obligations, Co-Counsel shall have a first Lien in, to, and under the Collateral pari passu with Borrower to secure the Co-Counsel Obligations.  Virage

retains the sole right to commence and maintain any enforcement action against the Collateral in accordance herewith.

2.4     Waiver of Right of Marshalling, Etc.Agent and Virage each agree not to assert and hereby waive, to the fullest extent permitted by law, any right to demand, request, plead, or otherwise assert or otherwise claim, in each case against the other, the benefit of, any marshaling, appraisal, valuation, or other similar right that may otherwise be available under applicable law or any other similar rights a secured creditor may have under applicable law.

2.5     Collection of Proceeds from the Collateral.One hundred percent (100%) of all Proceeds from the Collateral shall be paid to the Agent Account and disbursed in accordance herewith.

2.6     Segregation of Proceeds by Agent.Upon receipt of Proceeds in the Agent Account, Agent, with input from the Parties hereto, shall determine what portion of the Proceeds constitutes Proceeds from any attorney employment contracts or agreements with such clients for the engagement for legal services with the Borrower for the NFL Litigation (the *"Fee Agreements"*), and any docketed or filed cases for which the Borrower is serving as counsel in such NFL Litigation (the *"Docketed Cases"*, together with the Fee Agreements, collectively the *"Current Cases"* or individually a *"Current Case"*). For purposes of this Agreement, *"Excluded Cases"* shall mean any clients or cases engaged by the Borrower on or after the date hereof and which are attributable to the NFL Litigation.

2.7     Application of Proceeds of NFL Litigation.On each Payment Date, Agent will apply any Current Cases Proceeds in the Agent Account as of the close of business on the Payment Date in the following order of application:

FIRST, to the payment of all reasonable and documented costs and expenses incurred by Virage or Co-Counsel, as the case may be, in connection with the enforcement of Liens or such sale, collection or realization, or otherwise in connection with the Current Cases, and all amounts advanced by Virage or Co-Counsel, as the case may be, to protect the Current Cases (including, without limitation, any amounts paid in respect of taxes, filing fees, and satisfaction of liens on the Current Cases of third parties), including all court costs and the reasonable fees and expenses of its agents and legal counsel, the repayment of all advances made by Virage or Co-Counsel, as the case may be, hereunder or under any other Collateral Document on behalf of any Obligor in connection with the Current Cases and any other reasonable and documented costs or expenses incurred in connection with the exercise of any right or remedy hereunder in connection with the Current Cases (collectively, all of the foregoing, the *"Amounts"*);

SECOND, with respect to Current Cases Proceeds, one hundred percent (100%) of the remaining Proceeds in the Agent Account as follows:

(i)     60% to Virage for application to the Virage Obligations (with such distribution between the Virage SPV Obligations and the Virage VL1114 Obligations as determined by Virage in its sole discretion);

(ii)    20% to Co-Counsel;

(iii)    10% to the Assigned Account, defined in Schedule 1, for the application to expenses related to the NFL Litigation; and

(iii)    10% to Borrower, unless a Virage Event of Default exists in which case such amount shall be distributed to Virage to apply to the Virage Obligations as determined by Virage in its sole discretion.

Following repayment of the Virage Obligations and the amounts set forth in this Section 2.7, the provisions of Section 1.3(b), Section 1.3(c), and Section 1.3(d) of the Co-Counsel Agreement shall apply with respect to the disbursement to Borrower and Co-Counsel of any proceeds from any Current Cases or Excluded Cases.

2.8    Payments to Co-Counsel for Amounts.*Payments from New Loan.* During the term of this Agreement, Virage shall, upon review of invoices submitted by Co-Counsel, permit the reimbursement of Amounts incurred by Co-Counsel with respect to work on the NFL Litigation as disbursements directed from Borrower under New Loan (as defined in the Virage VL1114 Credit Agreement).  Borrower authorizes Virage to make an initial disbursement of Seventy-Four Thousand Nine Hundred Thirty-Eight Dollars and 23/100 ($74,938.23) to be paid to Co-Counsel's Account as listed in this Agreement within three (3) Business Days of execution of this Agreement, followed by consecutive monthly disbursements of up to Seventy-Five Thousand Dollars and 00/100 ($75,000.00) per month from the New Loan to be paid to Co-Counsel's Account as listed in this Agreement upon request from Co-Counsel for reimbursement of Amounts. Notwithstanding a Virage Event of Default, or default or breach by Borrower, or any instructions by the Borrower to the contrary, each of Borrower and Virage agree that such payments will continue for a period of four (4) months following the Effective Date of this Agreement, unless otherwise extended by agreement of Borrower and Virage.

(b)    *Payments Following Use of New Loan.* Following payments made from the New Loan pursuant to Section 2.8, Borrower, Virage and Co-Counsel agree that further payments for Amounts may continue either as: (i) Borrower and Virage agree to a further advance to Borrower to fund the payment of Amounts as contemplated by this Agreement, or (ii) in the event that Borrower and Virage cannot agree on a further advance, both parties negotiating in good faith, Virage will continue to reimburse Co-Counsel for Amounts on a monthly basis, in an amount and as set forth above, which shall not exceed a total amount of One Hundred Thousand Dollars and 00/100 ($100,000.00); provided, that, if such cap is reached Virage and Co-Counsel agree to meet and discuss in good faith if additional funds are needed based on the current status of the Collateral. The Parties agree that any funds disbursed as Amounts under the preceding sentence shall be Virage Obligations and due and repaid as set forth in Section 2.7 above.

(c)    *Conditions Precedent to Receipt of Payments for Amounts.* As condition precedent to receiving such payments described in Sections 2.7 above, Co-Counsel must be the attorney of record for the NFL Litigation (including as a dual representative), and Co-Counsel agrees to provide Virage with access to the information with respect to any such Amounts. Virage otherwise has no obligation to verify the accuracy or authenticity of such Amounts as presented by Co-Counsel.  As a further condition to funding payment for any Amounts, Virage may

discontinue any such payments or reimbursement, notwithstanding any direction by Borrower, upon either: (i) Co-Counsel losing the ability to practice law or receiving any Proceeds, (ii) a material breach by Co-Counsel of this Agreement or the Co-Counsel Agreement that has not been waived by Virage, (iii) a termination of the Co-Counsel Agreement, or (iv) failure of Co-Counsel to pursue recoveries in good faith and with reasonable diligence from the Collateral; provided, that, Virage and Borrower agree that payment for Amounts incurred up to the date in which any such default occurs will promptly be reimbursed to Co-Counsel.

2.9     Payment Accounts. All payments shall be made to the Parties below at the following accounts:

    (a)     If to Agent, to the Agent Account;

    (b)     If to Virage, to the Virage Account;

    (c)     If to Co-Counsel, to the Co-Counsel Account; and

    (d)     If to Borrower, to the Borrower Account or Assigned Account.

2.10     Amendments to Co-Counsel Documents. Borrower, Guarantor, and Co-Counsel agree (a) not to modify any Co-Counsel Documents in any manner adverse to the interests of Virage and (b) to provide Virage with a copy of any such modification or amendment to the Co-Counsel Documents.

2.11     Administration of Virage Obligations and Collateral. Virage need not at any time give Co-Counsel notice of any kind of the creation or existence of any Virage Obligations, nor of the amount or terms thereof, all such notice being hereby expressly waived. Also, Virage may at any time and from time to time, without the consent of or notice to Co-Counsel, without incurring responsibility to Co-Counsel, and without impairing or releasing the obligation of Co-Counsel under this Agreement (i) renew, refund, or extend the maturity of, or increase or decrease the amount of, the Virage VL1114 Obligations, the Virage SPV Obligations, or any part of either thereof, or otherwise revise, amend, or alter the terms and conditions thereof, (ii) sell, exchange, release, or otherwise deal with any property by whomsoever at any time pledged, mortgaged, or otherwise hypothecated or subjected to a lien to secure any Virage Obligations, and (iii) exercise or refrain from exercising any rights against Borrower and others, including Co-Counsel. Co-Counsel further agrees that Virage has complete discretion in, and shall not be liable in any manner to Co-Counsel for, determining how, when, and in what manner Virage administers extensions of credit to Borrower or exercises any rights or remedies with respect to, or forecloses or otherwise realizes upon, any collateral for any Virage Obligations or any other property or assets.  Without in any way limiting the foregoing, Co-Counsel specifically acknowledges and agrees that Virage may take such actions as Virage deems appropriate to enforce the Virage Obligations or any collateral therefor, whether or not such action is beneficial to the interest of Co-Counsel.  Also without in any way limiting the foregoing, Co-Counsel hereby agrees that, in connection with any foreclosure, sale or other disposition of any collateral (or any portion thereof), (a) the lien of Co-Counsel on such collateral shall automatically be released if, when, and to the same extent that Virage releases its lien on such collateral (provided Co-Counsel shall retain its lien on any

proceeds thereof to the extent not applied to the Virage Obligations, subject to the terms of this Agreement) and (b) Co-Counsel hereby irrevocably authorizes Virage and its agents to prepare and record or otherwise execute and deliver any releases and terminations of Co-Counsel's security interest and lien on any such Collateral at any time only to the extent that this Agreement requires such security interest or lien be released or terminated. In order for Virage to enforce its rights in the Collateral, there shall be no obligation on Virage's part, at any time, to resort for payment of the Virage Obligations to any obligor thereon or guarantor thereof, or to any other Person or entity, their properties or estates, or to resort to any other rights or remedies whatsoever, and Virage shall have the right to foreclose or otherwise realize upon any collateral (including any on which Co-Counsel also may have a lien) irrespective of whether or not other proceedings or steps are pending seeking resort to or realization upon or from any of the foregoing. Notwithstanding the foregoing, (i) Virage agrees to apply any Current Cases Proceeds in accordance with Section 2.6 and (ii) Virage and Borrower shall not amend the Virage Obligations in any way that would change the distribution to Co-Counsel as set forth in the terms of this Agreement

2.12    Bankruptcy Issues.Co-Counsel agrees that in the event bankruptcy or insolvency proceedings are instituted by or against Borrower (i) Virage may consent to the use of cash collateral or provide post-petition financing to Borrower on such terms and conditions and in such amounts as Virage, in its sole discretion, may decide and that, in connection with such cash collateral usage or such financing, Borrower (or a trustee appointed for its estate) may grant to Virage or its agent liens and security interests upon all or any part of the assets or property of Borrower, which liens and security interests may secure payment of Virage Obligations, whether such Virage Obligations arose prior to the filing of the petition for relief or arose thereafter, and which liens and security interests and which post-petition financing may be superior in priority to the claims of Co-Counsel on the Co-Counsel Obligations, (ii) Co-Counsel will not raise any objection it may have to any claim by Virage to "adequate protection" of Virage's interest in any security it may have for the Virage Obligations, (iii) Co-Counsel will not assert any right it may have to "adequate protection" of Co-Counsel's interest in any security it may have for the Co-Counsel Obligations, and (iv) Co-Counsel will not seek to have the automatic stay lifted with respect to any security Co-Counsel may have for the Co-Counsel Obligations unless Virage has obtained an order lifting the automatic stay with respect to its security for the Virage Obligations. Co-Counsel will not object to or oppose a sale or other disposition of any property securing all or any part of the Virage Obligations free and clear of security interests, liens, or other claims of Co-Counsel under Section 363 of the Bankruptcy Code or any other provision of the Bankruptcy Code or similar bankruptcy or insolvency statute if Virage has consented to such sale or disposition. Co-Counsel waives any claim it may now or hereafter have arising out of Virage's election, in any bankruptcy or insolvency proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b)(2) of the Bankruptcy Code.

## SECTION 3. MISCELLANEOUS PROVISIONS

3.1    Successors and Assigns.This Agreement and the rights and benefits hereof will inure to the sole and exclusive benefit of, and be enforceable by, Agent and each present

and future holder of the Virage Obligations and/or the Co-Counsel Obligations, as the case may be, and all of their respective successors and assigns.

3.2     Delay and Waiver.No failure to exercise, no course of dealing with respect to the exercise of, and no delay in exercising, any right, power, or remedy inuring to the benefit of any Secured Party arising under this Agreement or any of the other Collateral Documents will impair any such right, power, or remedy or operate as a waiver thereof. No single or partial exercise of any such right, power, or remedy will preclude any other or future exercise thereof or the exercise of any other right, power, or remedy.    The remedies herein are cumulative and are not exclusive of any remedies provided by law.

3.3     Notices.Unless otherwise specifically provided herein, any communications, including notices and instructions, between the Parties or notices provided herein to be given shall be given in writing to the Parties at the following addresses:

| | |
|---|---|
| If to Agent: | ARCHER SYSTEMS, LLC (f/k/a Settlement Alliance, LLC)<br>5847 San Felipe Street, Suite 4550<br>Houston, Texas 77057<br>Attn: Scott Freeman |
| If to Co-Counsel: | Shenaq PC<br>3500 Lenox Road, Suite 1500<br>Atlanta, Georgia 30326<br>Attn: Amir Shenaq |
| If to Virage: | Virage SPV 1 LLC<br>1700 Post Oak Boulevard<br>2 BLVD Place, Suite 300<br>Houston, Texas 77056<br>Attn: Bryan Patterson, COO |
| If to Borrower: | Howard & Associates, Attorneys at Law, P.A.<br>1415 East Piedmont Drive, Suite 5<br>Tallahassee, Florida 32308<br>Attn: Phillip T. Howard |
| If to Guarantor: | Phillip T. Howard<br>1415 East Piedmont Drive, Suite 5<br>Tallahassee, Florida 32308. |

All notices and communications may be personally served, sent by facsimile or first-class mail, certified or registered or courier service, and shall be deemed to have been given when delivered in person or by courier service and signed for against receipt thereof, upon receipt of facsimile, or three (3) Business Days after depositing it in the mail with postage prepaid and properly addressed. Failure to mail a notice or communication to a holder of Debt or any defect in it will not affect its sufficiency with respect to other holders of Debt.

11

3.4     Entire Agreement. This Agreement states the complete agreement of the Parties and supersedes all oral negotiations and prior writings in respect of such undertaking, and to the extent that the terms of this Agreement conflict with any of the Credits Agreements, the terms of this Agreement shall supersede and control in all respects.

3.5     Severability. If any provision of this Agreement is invalid, illegal, or unenforceable in any respect or in any jurisdiction, the validity, legality, and enforceability of such provision in all other respects and of all remaining provisions, and of such provision in all other jurisdictions, will not in any way be affected or impaired thereby.

3.6     Headings. Section headings herein have been inserted for convenience of reference only, are not to be considered a part of this Agreement and will in no way modify or restrict any of the terms or provisions hereof.

3.7     Governing Law. **THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES.  VENUE FOR ANY DISPUTE HEREUNDER WHETHER IN CONTRACT OR IN TORT SHALL LIE EXCLUSIVELY IN THE STATE OR FEDERAL COURTS OF HARRIS COUNTY, TEXAS.**

3.8     Counterparts This Agreement may be executed in any number of counterparts (including by facsimile), each of which when so executed and delivered will be deemed an original, but all such counterparts together will constitute but one and the same instrument.

3.9     Effectiveness. This Agreement will become effective upon the execution of a counterpart hereof by each of the Parties and receipt by each Party of written notification of such execution and written or telephonic authorization of delivery thereof.  Delivery of an executed counterpart of a signature page to this Agreement by telecopier or by electronic transmission (in PDF form) shall be as effective as delivery of a manually executed counterpart hereof.

3.10    Insolvency. This Agreement will be applicable both before and after the commencement of any Insolvency or Liquidation Proceeding by or against any Obligor. The relative rights, as provided for in this Agreement, will continue after the commencement of any such Insolvency or Liquidation Proceeding on the same basis as prior to the date of the commencement of any such case, as provided in this Agreement.

3.11    Rights and Immunities of Agent. Agent will be entitled to all of the rights, protections, immunities and indemnities set forth in that certain Service Agreement dated on or about even date herewith by and between Agent and Guarantor, the terms of which are hereby incorporated by reference.

3.12    Further Assurances. The Parties hereto agree that each of them shall take such further action and shall execute and deliver such additional documents and instruments (in recordable form, if requested) as Agent may reasonably request to effectuate the terms of this Agreement.

3.13    Indemnification.

Borrower agrees to indemnify and hold Virage, including its partners, officers, directors, employees, and affiliates (collectively, the *"Virage Indemnified Parties"*) harmless from and against any costs, losses, expenses, damages, claims, demands, or causes of action (collectively, the *"Losses"*) incurred by the Virage Indemnified Parties arising out of or related to this Agreement, including, but not limited to any Losses arising out of or related to any claim by Borrower or Co-Counsel against one another.

[Signatures on Following Pages]

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their respective officers or representatives as of the date first above written.

**AGENT:**

ARCHER SYSTEMS, LLC (F/K/A
SETTLEMENT ALLIANACE, LLC,
a Texas limited liability company

By: _____
Name: ___Brian Polarek_____
Title: _Director_____


**VIRAGE:**

VIRAGE SPV 1 LLC,
a Delaware limited liability company

By:  **Virage Capital Management LP**, its manager


By:  **Virage LLC**, its general partner

By: _____
        Name: Edward Ondarza
        Title:  Manager


**BORROWER:**

HOWARD & ASSOCIATES, ATTORNEYS AT
LAW, P.A., a Florida Professional Corporation

By: _____
Name: ___Tim Howard_____
Title: ___President_____

**CO-COUNSEL:**

SHENAQ P.C., a Georgia Professional Corporation

By:_____
Name:_____
Title:_____


**GUARANTOR:**

_____
PHILLIP T. HOWARD

**CO-COUNSEL:**

SHENAQ P.C., a Georgia Professional Corporation

By: _____
Name: _____
Title: _____

**GUARANTOR:**

_____
PHILLIP T. HOWARD

## SCHEDULE 1

## ACCOUNT INFORMATION

| | Account | Details |
|---|---|---|
| 1 | Agent Account | Bank Name: Amegy Bank<br>Account Name: Shenaq NFL Concussion QSF<br>Account Number: ▮▮▮<br>Routing Number: ▮▮▮ |
| 2 | Assigned Account | Bank Name: Origin Bank<br>Account Name: Howard and Associates, Attorneys at Law PA<br>Account Number: ▮▮▮<br>Routing Number: ▮▮▮ |
| 3 | Virage SPV Account | Bank Name: Bank of America, N.A.<br>Account Name: Virage SPV 1 LLC<br>Routing No.: ▮▮▮<br>Account No.: ▮▮▮<br>Reference: Virage Loan Payment VL1065C |
| 4 | Virage VL1114 Account | Bank Name: Bank of America, N.A.<br>Account Name: Virage SPV 1 LLC<br>Routing No.: ▮▮▮<br>Account No.: ▮▮▮<br>Reference: Virage Loan Payment VL1114 |
| 5 | Co-Counsel Account | Bank Name: Amegy Bank<br>Account Name: Shenaq PC<br>Routing No.: ▮▮▮<br>Account No.: ▮▮▮ |
| 6 | Borrower Account | Bank Name: Wells Fargo<br>Account Name: Howard & Associates<br>Routing No.: ▮▮▮<br>Account No.: ▮▮▮ |

# EXHIBIT A

## CO-COUNSEL AGREEMENT

**EXHIBIT B**

**SCHEDULE OF CASES**

| | | Schedule B | | |
|---|---|---|---|---|
| | | NFL Cases | | |
| Docket | Firm ID | Settlement Program ID | FirstName | LastName |
| NFL | A001 | 100008089 | | |
| NFL | A002 | 100009933 | | |
| NFL | A003 | 100011062 | | |
| NFL | A004 | 100012950 | | |
| NFL | A005 | pending | | |
| NFL | A006 | 100001083 | | |
| NFL | A007 | 950004269 | | |
| NFL | A008 | 100007284 | | |
| NFL | A009 | 100007606 | | |
| NFL | A010 | 950006420 | | |
| NFL | A011 | 900006057 | | |
| NFL | A012 | 950002072 | | |
| NFL | A013 | 100006366 | | |
| NFL | A014 | 100008888 | | |
| NFL | A015 | 100012596 | | |
| NFL | A016 | 100015245 | | |
| NFL | A017 | 950000552 | | |
| NFL | A018 | 250006273 | | |
| NFL | A019 | 100011605 | | |
| NFL | A020 | 100011605 | | |
| NFL | A021 | 100005015 | | |
| NFL | A022 | 900020375 | | |
| NFL | A023 | 950006396 | | |
| NFL | A024 | 100002377 | | |
| NFL | A025 | 100000981 | | |
| NFL | A026 | 100011624 | | |
| NFL | A027 | 100008909 | | |
| NFL | A028 | 110022268 | | |
| NFL | A029 | 250018681 | | |
| NFL | A030 | 950002518 | | |
| NFL | A031 | 100010504 | | |
| NFL | A032 | 950006728 | | |
| NFL | A033 | 100016980 | | |
| NFL | A034 | 100006260 | | |
| NFL | A035 | pending | | |
| NFL | A036 | 100016086 | | |
| NFL | A037 | 100002859 | | |
| NFL | A038 | 100013784 | | |
| NFL | A039 | 950000930 | | |
| NFL | A040 | 100002568 | | |
| NFL | A041 | 100016583 | | |
| NFL | A042 | 100010763 | | |
| NFL | A043 | 100010556 | | |
| NFL | A044 | 100005816 | | |
| NFL | A045 | 950004279 | | |
| NFL | A046 | pending | | |
| NFL | A047 | 100002927 | | |
| NFL | A048 | 100005185 | | |
| NFL | A049 | 100013933 | | |
| NFL | A050 | pending | | |
| NFL | A051 | 100015253 | | |

Initials: _____

| Docket | Firm ID | Settlement Program ID | FirstName | LastName |
|--------|---------|----------------------|-----------|----------|
| NFL | A052 | pending | | |
| NFL | A053 | 100005471 | | |
| NFL | A054 | 100016088 | | |
| NFL | A055 | 100006859 | | |
| NFL | A056 | 100000482 | | |
| NFL | A057 | 100005305 | | |
| NFL | A058 | 950015221 | | |
| NFL | A059 | 100016438 | | |
| NFL | A060 | 100016949 | | |
| NFL | A061 | 100006069 | | |
| NFL | A062 | pending | | |
| NFL | A063 | 100004031 | | |
| NFL | A064 | 100000151 | | |
| NFL | A065 | 100004123 | | |
| NFL | A066 | 100005226 | | |
| NFL | A067 | 100002513 | | |
| NFL | A068 | 100001561 | | |
| NFL | A069 | 100002309 | | |
| NFL | A070 | 950004136 | | |
| NFL | A071 | 100004539 | | |
| NFL | A072 | 900004845 | | |
| NFL | A073 | 100005010 | | |
| NFL | A074 | 100008314 | | |
| NFL | A075 | 100005531 | | |
| NFL | A076 | 100015265 | | |
| NFL | A077 | 100001478 | | |
| NFL | A078 | 100017102 | | |
| NFL | A079 | 100010453 | | |
| NFL | A080 | 100010591 | | |
| NFL | A081 | 950006303 | | |
| NFL | A082 | 100006568 | | |
| NFL | A083 | 100009270 | | |
| NFL | A084 | 950008426 | | |
| NFL | A085 | 100011956 | | |
| NFL | A086 | 100016511 | | |
| NFL | A087 | 950004260 | | |
| NFL | A088 | 100012500 | | |
| NFL | A089 | 950004390 | | |
| NFL | A090 | 100003359 | | |
| NFL | A091 | pending | | |
| NFL | A092 | 100000471 | | |
| NFL | A093 | 100003382 | | |
| NFL | A094 | 100012775 | | |
| NFL | A095 | 250008337 | | |
| NFL | A096 | 100005825 | | |
| NFL | A097 | 250004095 | | |
| NFL | A098 | 900005726 | | |
| NFL | A099 | 100000455 | | |
| NFL | A100 | 100002124 | | |
| NFL | A101 | 100002225 | | |
| NFL | A102 | 100007841 | | |
| NFL | A103 | 950006421 | | |
| NFL | A104 | 100009517 | | |

Initials: 

| Docket | Firm ID | Settlement Program ID | FirstName | LastName |
|---|---|---|---|---|
| NFL | A105 | 950008725 | | |
| NFL | A106 | 100013173 | | |
| NFL | A107 | 950006432 | | |
| NFL | A109 | 100014620 | | |
| NFL | A110 | 100011106 | | |
| NFL | A111 | 110018630 | | |
| NFL | A112 | 950006417 | | |
| NFL | A113 | 100007353 | | |
| NFL | A114 | 10002598 | | |
| NFL | A115 | 950006399 | | |
| NFL | A116 | 100014195 | | |
| NFL | A117 | 100002587 | | |
| NFL | A118 | 100014059 | | |
| NFL | A119 | 100002172 | | |
| NFL | A120 | 100007134 | | |
| NFL | A121 | 100008615 | | |
| NFL | A122 | 100004558 | | |
| NFL | A123 | 100006856 | | |
| NFL | A124 | 100008438 | | |
| NFL | A125 | 950006085 | | |
| NFL | A126 | 100014486 | | |
| NFL | A127 | 950002970 | | |
| NFL | A128 | 100010346 | | |
| NFL | A129 | 100010152 | | |
| NFL | A130 | 950008457 | | |
| NFL | A131 | 950006418 | | |
| NFL | A132 | | | |
| NFL | A133 | 100008558 | | |
| NFL | A134 | 100007356 | | |
| NFL | A135 | 100012484 | | |
| NFL | A136 | 950004375 | | |
| NFL | A137 | 950008612 | | |
| NFL | A138 | | | |
| NFL | A139 | 100004778 | | |
| NFL | A140 | 260000709 | | |
| NFL | A141 | 100009228 | | |
| NFL | A142 | 100012049 | | |
| NFL | A143 | 100008196 | | |
| NFL | A144 | 100009524 | | |
| NFL | A145 | 100006483 | | |
| NFL | A146 | 100014218 | | |
| NFL | A147 | 100006163 | | |
| NFL | A148 | pending | | |
| NFL | A149 | 100006163 | | |
| NFL | A150 | 100008197 | | |
| NFL | A151 | 100001670 | | |
| NFL | A152 | 100010541 | | |
| NFL | A153 | 100013651 | | |
| NFL | A154 | 100010104 | | |
| NFL | A155 | 100010649 | | |
| NFL | A156 | 100009265 | | |
| NFL | A157 | pending | | |
| NFL | A158 | 100007746 | | |

Initials: _____

| Docket | Firm ID | Settlement Program ID | FirstName | LastName |
|---|---|---|---|---|
| NFL | A159 | 100011822 | | |
| NFL | A160 | 100010294 | | |
| NFL | A161 | 100010804 | | |
| NFL | A162 | 100011061 | | |
| NFL | A163 | 260000638 | | |
| NFL | A164 | 250012442 | | |
| NFL | A165 | 950006446 | | |
| NFL | A166 | 100004989 | | |
| NFL | A167 | | | |
| NFL | A168 | 100008938 | | |
| NFL | A169 | 100001214 | | |
| NFL | A170 | 100004836 | | |
| NFL | A171 | 100005236 | | |
| NFL | A172 | 100007262 | | |
| NFL | A173 | 100016692 | | |
| NFL | A174 | 100017210 | | |
| NFL | A175 | 100001007 | | |
| NFL | A176 | 100006019 | | |
| NFL | A177 | 100001903 | | |
| NFL | A178 | 751004834 | | |
| NFL | A179 | 950006410 | | |
| NFL | A180 | 100012217 | | |
| NFL | A181 | 100006418 | | |
| NFL | A182 | 100006418 | | |
| NFL | A183 | 100005096 | | |
| NFL | A184 | 110012530 | | |
| NFL | A185 | 100016131 | | |
| NFL | A186 | 100010608 | | |
| NFL | A187 | 100005759 | | |
| NFL | A188 | 10000793 | | |
| NFL | A189 | pending | | |
| NFL | A190 | 100003357 | | |
| NFL | A191 | 250006361 | | |
| NFL | A192 | 100001914 | | |
| NFL | A193 | 950002055 | | |
| NFL | A194 | 100004726 | | |
| NFL | A195 | 100001240 | | |
| NFL | A196 | 950004371 | | |
| NFL | A197 | 100002247 | | |
| NFL | A198 | 100006799 | | |
| NFL | A199 | 100006997 | | |
| NFL | A200 | 100009505 | | |
| NFL | A201 | 100011917 | | |
| NFL | A202 | 100015129 | | |
| NFL | A203 | 950006411 | | |
| NFL | A204 | 100009244 | | |
| NFL | A205 | 950006404 | | |
| NFL | A206 | 100007581 | | |
| NFL | A207 | 100012030 | | |
| NFL | A208 | 100004235 | | |
| NFL | A209 | 100009244 | | |
| NFL | A210 | 100008817 | | |
| NFL | A211 | 100001429 | | |

Initials: _____

| Docket | Firm ID | Settlement Program ID | FirstName | LastName |
|--------|---------|----------------------|-----------|----------|
| NFL | A212 | 100006342 | | |
| NFL | A213 | 100010743 | | |
| NFL | A214 | 950004290 | | |
| NFL | A215 | 100002881 | | |
| NFL | A216 | 100002815 | | |
| NFL | A217 | 100007450 | | |
| NFL | A218 | 100013757 | | |
| NFL | A219 | 950006407 | | |
| NFL | A220 | 100003299 | | |
| NFL | A221 | 100006329 | | |
| NFL | A222 | 950002981 | | |
| NFL | A223 | 100010549 | | |
| NFL | A224 | pending | | |
| NFL | A225 | 950013105 | | |
| NFL | A226 | 950004291 | | |
| NFL | A227 | 950004329 | | |
| NFL | A228 | 100015539 | | |
| NFL | A229 | 100015726 | | |
| NFL | A230 | 100015222 | | |
| NFL | A231 | pending | | |
| NFL | A232 | 950006423 | | |
| NFL | A233 | 100011758 | | |
| NFL | A234 | 100007617 | | |
| NFL | A235 | 100007816 | | |
| NFL | A236 | 250019834 | | |
| NFL | A237 | 100011098 | | |
| NFL | A238 | 100004208 | | |
| NFL | A239 | 100012199 | | |
| NFL | A240 | 100002008 | | |
| NFL | A241 | 100005247 | | |
| NFL | A242 | 100013632 | | |
| NFL | A243 | 100013900 | | |
| NFL | A244 | 950002069 | | |
| NFL | A245 | 100013070 | | |
| NFL | A246 | 100001390 | | |
| NFL | A247 | 100016530 | | |
| NFL | A248 | 100007625 | | |
| NFL | A249 | 100004935 | | |
| NFL | A250 | 100005853 | | |
| NFL | A251 | 950004294 | | |
| NFL | A252 | pending | | |
| NFL | A253 | 950000347 | | |
| NFL | A254 | 100016757 | | |
| NFL | A255 | 100004636 | | |
| NFL | A256 | pending | | |
| NFL | A257 | 250021840 | | |
| NFL | A258 | 100004936 | | |
| NFL | A259 | 100004728 | | |
| NFL | A260 | 950002551 | | |
| NFL | A261 | 260000470 | | |
| NFL | A262 | 950015098 | | |
| NFL | A263 | | | |
| NFL | A264 | 100006006 | | |

initials: _____

| Docket | Firm ID | Settlement Program ID | FirstName | LastName |
|--------|---------|----------------------|-----------|----------|
| NFL | A266 | | | |
| NFL | A267 | 950012705 | | |
| NFL | A269 | 950011600 | | |
| NFL | A270 | 950015148 | | |
| NFL | A271 | 900009556 | | |
| NFL | A272 | 100003167 | | |
| NFL | A273 | pending | | |
| NFL | A274 | pending | | |
| NFL | A275 | pending | | |
| NFL | A277 | pending | | |
| NFL | A278 | pending | | |
| NFL | A279 | pending | | |
| NFL | A280 | pending | | |
| NFL | A281 | pending | | |
| NFL | A282 | pending | | |
| NFL | A283 | 950006425 | | |
| NFL | A284 | 100001316 | | |
| NFL | A285 | 100004727 | | |
| NFL | A286 | 950015256 | | |
| NFL | A287 | 100005601 | | |
| NFL | | 950015375 | | |
| NFL | | 950015164 | | |
| NFL | | 950014680 | | |
| NFL | | 950013587 | | |
| NFL | | 950013488 | | |
| NFL | | 950011728 | | |
| NFL | | 950008833 | | |
| NFL | | 950008314 | | |
| NFL | | 950006464 | | |
| NFL | | 950003541 | | |
| NFL | | 950002976 | | |
| NFL | | 950000154 | | |
| NFL | | 900007661 | | |
| NFL | | 900002083 | | |
| NFL | | 260000708 | | |
| NFL | | 100017120 | | |
| NFL | | 100016212 | | |
| NFL | | 100016098 | | |
| NFL | | 100015358 | | |
| NFL | | 100013266 | | |
| NFL | | 100013211 | | |
| NFL | | 100010791 | | |
| NFL | | 100010114 | | |
| NFL | | 100009513 | | |
| NFL | | 100009454 | | |
| NFL | | 100009241 | | |
| NFL | | 100009071 | | |
| NFL | | 100008899 | | |
| NFL | | 100007993 | | |
| NFL | | 100007851 | | |
| NFL | | 100006903 | | |
| NFL | | 100006552 | | |
| NFL | | 100006053 | | |

Initials: _____

| Docket | Firm ID | Settlement Program ID | FirstName | LastName |
|--------|---------|----------------------|-----------|----------|
| NFL | | 100004544 | | |
| NFL | | 100004206 | | |
| NFL | | 100003758 | | |
| NFL | | 100003606 | | |
| NFL | | 100003138 | | |
| NFL | | 100002605 | | |
| NFL | | 100002598 | | |
| NFL | | 100002551 | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |

Initials: _____

| Docket | Firm ID | Settlement Program ID | FirstName | LastName |
|--------|---------|----------------------|-----------|----------|
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |

Initials: _____

| Docket | Firm ID | Settlement Program ID | FirstName | LastName |
|--------|---------|----------------------|-----------|----------|
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |

Initials: _____

| Docket | Firm ID | Settlement Program ID | FirstName | LastName |
|--------|---------|-----------------------|-----------|----------|
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |
| NFL | | | | |

Initials: _____